IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CARJUAN D. ADKINS,**<br><br>             **Plaintiff,**<br><br>v.<br><br>**RICHARD WATSON, DELANCEY MOORE, III, JANELLE BLOODWORTH, BONNIE JONES, CHARLES GERMAINE, PATRICK FULTON, RICHARD SMITH, and DR. MARCOWITZ,**<br><br>             **Defendants.** | Case No. 20-cv-601-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on motions for summary judgment filed by Dr. David Marcowitz[1], Bonnie Jones, and Janelle Bloodworth (Docs. 77, 78) and Richard Watson, Delancey Moore, Richard Smith, Patrick Fulton, and Charles Germaine (Doc. 87). Plaintiff Carjuan Adkins filed responses to the motions (Docs. 88 and 92, respectively). Dr. Marcowitz, Jones, and Bloodworth filed a reply (Doc. 91). On March 8, 2022, the Court held an evidentiary hearing.

### Procedural Background

On June 23, 2020, Adkins, who at the time of filing his original Complaint was a pretrial detainee at the St. Clair County Jail, filed a Complaint that was later labeled by

---

[1] Dr. David Marcowitz has identified himself by his proper name. The Clerk of Court is DIRECTED to CORRECT the docket to reflect Dr. Marcowitz's proper name.

the Court as "virtually incoherent" and "loosely based in reality" (Doc. 6, p. 2). The Court dismissed the Complaint and assigned counsel to help Adkins draft an Amended Complaint (*Id*. at p. 3). Adkins, now represented by counsel, filed a First Amended Complaint (Doc. 15) and subsequently filed a Second Amended Complaint (Doc. 40).

Adkins's Second Amended Complaint (Doc. 40) alleges that on January 9, 2020, he was arrested and transferred to the St. Clair County Jail (*Id*. at p. 4). At the time of his arrest, he was experiencing symptoms associated with a psychiatric or psychotic disorder, including difficulty speaking, inability to focus, hallucinations, paranoia, memory loss, and mood swings (*Id*.). Although he experienced these symptoms on multiple occasions during his detention, Dr. Marcowitz and Bloodworth deemed him fit for confinement and failed to provide him with further care (*Id*. at p. 5).

Adkins also alleges that on May 4, 2020, he passed out in the dayroom (*Id*. at p. 6). Moore and Germaine approached Adkins and kicked him before transporting him to the infirmary in a wheelchair (*Id*.). While transporting him, the officers spun Adkins around in circles in the wheelchair and dumped him on the floor of the infirmary (*Id*.). On May 6, 2020, Adkins was informed that he had to leave the infirmary, but he was unable to move because he had not eaten in two days. Bonnie Jones forcefully applied a nasal spray and sprayed an unknown medication in his nostrils (*Id*.). Fulton and Smith then jumped on Adkins and tased him (*Id*.). They also punched him in the back of his head (*Id*.). He was then taken to the "Quiet Room" where he was held down and tased again (*Id*.).

Adkins's Second Amended Complaint alleges that following Counts:

    **Count 1:**    Eighth Amendment deliberate indifference claim against Dr. Marcowitz and Bloodworth.

    **Count 2:**    Eighth Amendment excessive force claim against Moore, Germaine, Jones, Fulton, and Smith.

    **Count 3:**    *Monell* claim against Sheriff Watson for establishing an official policy and/or acquiescing to an unofficial custom of correctional officers using excessive force to subdue detainees.

(Doc. 40).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added).

The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover,

"[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id*. at 742.

### A. St. Clair County Grievance Procedure

As a pretrial detainee, Adkins was required to follow the grievance procedure set forth in the "Detainee Rules and Regulations" handbook to properly exhaust his administrative remedies (*See* Doc. 87-2). The St. Clair County Jail has a two-step grievance process. The detainee must first submit a Captain's Request/Complaint (hereinafter referred to as "complaint") (*Id.* at p. 11). If the detainee does not receive a response to the complaint within 15 days, then the Jail Superintendent needs to be informed (*Id.*). The detainee shall submit a grievance to the shift supervisor within 24 hours after he learns of the conditions or circumstances prompting the grievance (*Id.*).[2] The immediate supervisor shall provide the detainee with a copy of the grievance within three days, and the original is forwarded to the Jail Superintendent (*Id.*). If the detainee is not satisfied with the initial response, he may submit the grievance to the Assistant Jail Superintendent within 48 hours of receiving the initial response (*Id.*). The decision of the Assistant Superintendent is then submitted to the Jail Superintendent within three days (*Id.*). The Jail Superintendent will review the Assistant Superintendent's response and either approve or disapprove of the response (*Id.*). His decision will be returned to the detainee within three days and constitutes a final resolution of the grievance (*Id.*).

At the evidentiary hearing, Captain Shan Collins, the custodian of grievances at

---

[2] The informal Captain's Request procedure appears to contradict the formal grievance procedures. At the evidentiary hearing, Captain Collins acknowledged that there were deadlines in the handbook, but in the day-to-day operation of the jail, the deadlines are not enforced. As long as a complaint is submitted, it will be responded to whether or not it is submitted in the proper timeline set forth in the handbook. Similarly, all grievances submitted for review are honored; none are rejected on the issue of timeliness.

the St. Clair County Jail, acknowledged that the deadlines set forth in the handbook are "convoluted." He testified that the jail instead responds to any complaint or grievance, no matter when it is received. The jail does have a two-step process. A detainee must fill out a complaint form and turn it in for review (Doc. 87-1, p. 2). When that form is returned to the detainee, the detainee can then file a grievance (*Id*. at p. 3). Collins testified that he responds to all grievances submitted by detainees. Once the detainee receives a response to the grievance, he has exhausted his administrative remedies. Although there are deadlines set forth in the handbook, Collins testified that the jail accepts any complaint and/or grievance form, no matter when it is submitted. Neither a complaint form nor a grievance will be disqualified based on timeliness.[3] Both forms are available to detainees, but they have to ask an officer to bring them the form. In order to obtain a grievance form, the detainee must show the officer his returned complaint form. Although neither form is available to detainees while in the Quiet Room, an area of the jail where individuals are housed while on suicide watch, the detainee can obtain forms once they are released from the Quiet Room.

## ANALYSIS

### A. Medical Defendants

Adkins alleges that Dr. Marcowitz and Bloodworth acted with deliberate

---

[3] Adkins's grievance file supports Collins's testimony. Adkins submitted a complaint on October 15, 2020, seeking a refund for his sick call on May 4, 2020 (Doc. 78-1, p. 21). Although written over five months after the May 4 incident in the infirmary, the complaint was reviewed, and a decision on the merits was provided (*Id*.). Similarly, his grievance regarding the same incident also was accepted and reviewed on the merits (*Id*. at p. 22).

indifference in failing to treat his psychiatric and psychotic symptoms. He also alleges that Jones used excessive force when she forcefully applied a nasal spray to Adkins while covering his mouth and spraying the substance in his nostrils.

### 1. Dr. Marcowitz and Bloodworth

As to Dr. Marcowitz and Bloodworth, they first argued in their motion that Adkins failed to submit a complaint or grievance on the claim against them. Adkins maintains that he submitted a complaint on January 22, 2020 (Doc. 78-1, p. 1). The complaint states that since his arrest, the St. Clair County Sheriff violated his rights by being deliberately indifferent to a serious medical need (*Id.*). The complaint notes that he was presented to court under the influence of an unknown substance (*Id.*). On January 24, 2020, Adkins submitted a grievance stating the same (*Id.* at p. 2).

Adkins argues that he was suffering from an untreated psychotic disorder at the time and was unable to understand or state any specifics regarding his condition or care (Doc. 88, p. 7). In essence, he argues that the process was unavailable to him because of his diminished mental state. A remedy is not "available" within the meaning of the PLRA to a prisoner unable to access the grievance procedure through no fault of his own, including prisoners who are physically or mentally unable to pursue the grievance procedure. *Lanaghan v. Koch*, 902 F.3d 683, 688 (7th Cir. 2018) (the "focus is not whether defendants engaged in affirmative misconduct, but whether [the inmate] was not able to file the grievance within the time period through no fault of his own," noting that the process can be unavailable to those physically unable to utilize it); *Weiss v. Barribeau*, 853 F.3d 873, 875 (7th Cir. 2017) (defendants failed to explain how an inmate suffering from

mental illness and hospitalization could utilize the grievance process); *Hurst v. Hantke*, 634 F.3d 409, 412 (7th Cir. 2011).

Adkins testified at the evidentiary hearing that at the time he was housed at the St. Clair County Jail, he only knew that he had an undiagnosed mental health disorder. After his release and later placement at Touchette Hospital, he was diagnosed with schizophrenia, bi-polar disorder, paranoia, and post-traumatic stress syndrome. While at the St. Clair County Jail, he testified he could not identify what was going on, he could not hear anything except ringing bells, and he could not determine where he was or what was happening to him. He later stated that he sometimes did not know what reality he was in. According to his testimony, his condition affected his ability to understand and follow directions.

Although Adkins testified that his mental state was such that he could not understand what was happening around him and could not follow directions, he also testified adequately about St. Clair County's grievance process and the pursuit of his grievances through that process. He testified that he knew that the grievance process was a two-step process because it was similar to another process he experienced in a Missouri jail. He also spoke to other inmates about the process when he arrived in January. He remembered and was able to describe the complaints and grievances that he filed. In fact, he filed 29 complaints and was able to complete the process by filing grievances on three of those issues (Doc. 87-1, p. 3). He also testified about his discussions with an officer regarding complaints.

The Court acknowledges that Adkins was suffering from some mental health

issues. The Court described his initial Complaint as "virtually incoherent" and "loosely based in reality" (Doc. 6, p. 2). But his testimony demonstrates that, at the time, he clearly understood the grievance process and was able to follow the process on numerous occasions. The Court finds that the process was available to him and that Adkins was able to utilize the process.

Turning to Adkins's January 22, 2020 complaint, it says nothing about his condition, does not indicate whether or not he was receiving medical care or complaining about his care, and does not even mention medical professionals. It merely states that there was deliberate indifference to his serious medical needs, noting he was presented to the Court under the influence of an unknown substance (Doc. 78-1, p. 1). The detainee handbook states that the grievance must include "the particulars concerning [the grievance]" (Doc. 87-2, p. 11). Although the handbook does not further describe what "particulars" should include, Captain Collins testified that the complaint/grievance needs to include more than generic information. The complaint/grievance would need to include the actual incident and what occurred. Although Collins acknowledged that the jail would respond to generic grievances, without a description, there is no accusation to be resolved.

Adkins did receive a response to the grievance, and it was fully exhausted.[4] But nothing in the grievance or response suggests that the jail was on notice of Adkins's

---

[4] On cross-examination, Captain Collins testified that he considered the January grievance to be fully exhausted. But he also testified that a generic claim of deliberate indifference would not allow the jail to address any specific issues that Adkins had with his medical care.

allegations regarding Dr. Marcowitz or Bloodworth. The response merely indicates that Adkins was seen by medical staff (Doc. 78-1, pp. 1-2). In fact, Adkins acknowledged at the hearing that he had not even seen Dr. Marcowitz in January when he wrote the grievance. Thus, the grievance could not possibly serve to exhaust claims against Dr. Marcowitz. Adkins's complaint and grievance provided the jail with notice about being presented at a hearing under the influence and about a medical need, but there was no notice as to the individual medical staff that he saw or the care he received. Because neither Adkins's complaint nor grievance contained any information that would put the jail on notice that he took issue with care he received from Dr. Marcowitz or Bloodworth, the Court finds that Adkins failed to exhaust his administrative remedies as to both individuals.

### 2. *Bonnie Jones*

As to Defendant Jones, she acknowledges in her motion that Adkins submitted a June 3, 2020 complaint regarding the May 4, 2020 incident. The complaint states that nurse Bonnie put something in his nostril, noting that the fluid was "infected," and it choked him (Doc. 78-1, p. 8). Adkins failed to file a grievance about his interaction with Jones. Adkins argues that he could not timely submit a grievance because after the incident he was placed in the Quiet Room which lacks access to complaints or grievance forms (Doc. 88-1). He also points out that Defendants did not follow their own procedures because they returned his complaint on June 8, 2020, which was more than the three days allowed by the grievance procedures. In response to the Jail Defendants' motion on the same incident, he argues that he submitted an earlier complaint in May that was never

returned.

At the evidentiary hearing, Captain Collins testified that the grievance process has been simplified and that deadlines are not taken into account. Thus, even though Adkins was housed in the Quiet Room and did not have access to a complaint form, he could file a complaint and grievance after his release. Adkins did file a complaint on June 3, 2020, which was deemed timely, and ruled on by Sergeant Chambers (Doc. 78-1, p. 8).

As to the second step in the process, Adkins argued in his responsive brief that he did not have access to a grievance and was not able to pursue his grievance through the second step of the process (Docs. 88, p. 3-4; 88-1; 92-1). At the evidentiary hearing, however, he testified for the first time that he did file a grievance. Given the contradiction between Adkins's affidavit and his testimony, the Court does not find his statements regarding his grievance to be truthful or trustworthy. Adkins initially testified that he turned in the grievance, that a lieutenant responded to the grievance, and he completed the grievance. He later testified that he did not believe that he received a response back to the grievance. But there is simply no evidence that he submitted a grievance after receiving his complaint back on June 8, 2020. There are numerous complaints and grievances in his file, but no record of this grievance.

In addition to the grievance Adkins testified he submitted, he also testified that he submitted an earlier complaint in May that was similar to his June 3, 2020 complaint. His June 3, 2020 complaint does state that he filed a complaint form and did not receive a response (Doc. 78-1, p. 8). The complaint does not indicate when he submitted the earlier complaint and, at the evidentiary hearing, Adkins could not recall the date of the earlier

complaint. There is no evidence of this complaint in Adkins's records (Doc. 78-1). Adkins testified that correctional officers throw complaints and grievances away. He stated that the officers tear them up because the officers do not have time to send them out. But he acknowledged that he never saw officers tear up *his* grievances, and only witnessed an officer tear up another inmate's grievance on one occasion in August 2020. There is no evidence in the record to suggest that Adkins submitted an earlier complaint or grievance that was then destroyed by officers. His records include two complaints which were received in early May 2020 (Doc. 78-1, pp. 6-7), and his June 3, 2020 complaint was received by the jail. There are also 29 complaints total in his record. If Adkins submitted an earlier complaint or if he submitted a grievance in response to his June 3 complaint, the Court finds that it would have been documented. The only evidence in the record is the statement in his complaint—that he filed a complaint form and he did not get a response—and his testimony, which the Court does not find credible. Accordingly, the Court finds that Adkins did not exhaust his claims against Jones, and she is entitled to summary judgment.

### B. Jail Staff Defendants

Adkins's claims against Moore and Germaine, as well as Smith and Fulton, focus on the complaint submitted on June 3, 2020. That complaint stated that on May 4, 2020, Adkins was escorted to the infirmary (Doc. 78-1, p. 8). Nurse Bonnie put an unknown substance in his nostrils, and he fell on the floor. Officers tried to pick him up, but he could not move due to the pain. The officers jumped on him and tased him, then punched him in the head. They then took him to the Quiet Room and punched him again (*Id.*).

As previously stated, the Court finds that Adkins did not properly exhaust his June 3, 2020 complaint. There is no evidence in the record to suggest that he submitted a grievance as he testified at the evidentiary hearing. He did not previously indicate that he filed a grievance. And there is no evidence in the record to suggest that a grievance or earlier complaint was written and then thrown away. Thus, the Court finds that Adkins failed to exhaust his administrative remedies as to his excessive force claim, including his *Monell* claim against Watson related to the excessive force.[5]  Accordingly Watson, Moore, Germaine, Smith, and Fulton are entitled to summary judgment on Counts 2 and 3.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the summary judgment motions filed by Janell Bloodworth, Bonnie Jones, and Dr. David Marcowitz (Docs. 77, 78) and Richard Watson, Delancey Moore, III, Richard Smith, Patrick Fulton, and Charles Germaine (Doc. 87). The Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED:   March 15, 2022**

NANCY J. ROSENSTENGEL
Chief U.S. District Judge

---

[5] There are no complaints or grievances in the record regarding any policies or procedures at the St. Clair County Jail with regards to excessive force. Because the June 3, 2020 complaint regarding excessive force was not fully exhausted and there is no evidence of an earlier complaint regarding excessive force, the policy claim related to the excessive form claim has also not been properly exhausted.